In the Matter of the Application of JOSEPH SMITH, Petitioner, for an Order against C. BARTON WYNKOOP and Others, Comprising the Municipal Civil Service Commission of the City of Utica, New York, and THOMAS J. NELSON, Comptroller of the City of Utica, New York, Respondents.

Supreme Court, Oneida County, December 9, 1940.

*Frank E. Sacco, Stephen W. Brennan, Jacob Tumposky* and *Lewis G. Fowler*, for the petitioner.

*Bartle Gorman, Corporation Counsel*, for the respondents.

*John J. Bennett, Jr., Attorney-General* [*Frederic C. Barns, Assistant Attorney-General,* and *Joseph Schechter, Counsel for the State Civil Service Commission*], for the State Civil Service Commission, as *amicus curiæ.*

MOREHOUSE, J.   The petitioner, Joseph Smith, has applied under article 78 of the Civil Practice Act for an order directing the municipal civil service commission of the city of Utica to certify his name upon the payroll of the veterans' welfare bureau for the position of clerk No. 2.   He was employed by the bureau as a bookkeeper from January 15, 1934, to May 1, 1937, and as clerk No. 2 from May 1, 1937, until June 30, 1940.   It has not been shown that he ever passed any competitive or qualifying civil service examination for such

positions, but his employment on a temporary basis for a period until June 30, 1940, was apparently permitted under existing statute. Section 3-l of the Public Welfare Law provides that not later than December 31 1939, there should be held competitive civil service examinations, from which eligible lists should be established and appointments made for such positions as had been determined to be permanent. The position of clerk No. 2 is permanent, and the Utica civil service commission conducted a competitive examination therefor, at which the petitioner competed. He failed to attain eligibility for appointment thereby, and was not permanently appointed to the position of clerk No. 2, but was continued in employment beyond June 30, 1940, the date when temporary employment was barred under section 3-l. His name was submitted to the commission upon the payroll of the bureau, but was denied certification by the commission, and payment of his salary refused by the comptroller. This proceeding is founded upon the claims of the petitioner that he had been regularly employed in the veterans' welfare bureau since January 15, 1934; that he held his position under the Civil Service Law in an exempt classification; that his position had not been abolished and that he, as an honorably-discharged soldier of the World war, could not be dismissed or his employment terminated without charges of incompetency, which have not been presented or heard.

The petitioner has failed to sustain his claim that he held his position in an exempt classification. There is no proof that the position of clerk No. 2 is in the exempt class as defined by section 13 of the Civil Service Law. Appointments to positions of bookkeeper and clerk are among those which must be made according to merit and fitness, to be ascertained by competitive examination (State Const. art. V. § 6), and must be filled in accordance with the provisions of the Civil Service Law. (*Matter of Kraus* v. *Singstad*, 275 N Y. 302.) His service as bookkeeper and clerk has been merely in a temporary capacity, and his position was at all times in the competitive class, subject to the statutes and rules relating to civil service, which, as to qualification, were temporarily suspended.

The remaining question for determination is whether the petitioner's temporary employment in a position declared to be permanent entitles him to continue without attaining eligibility as a result of a competitive examination and subsequent appointment. Section 3-l permitted temporary employment in a veterans' welfare bureau, but expressly provided that it should not continue beyond June 30, 1940. The petitioner's employment, like others, was for an emergency period, established by the Legislature, and permitted to continue for a limited time without qualification under the

Civil Service Law. That emergency period has expired and eligibility must now be determined by open competitive examination, with no preference granted to temporary employees except credit upon the examination for service rendered. (*Aversa* v. *Finegan*, 275 N. Y. 512.)

The appointment and continuance in employment of the petitioner has given him no preference or standing in respect to the permanent competitive class position he now claims to hold. Judge CROUCH clearly and completely stated the law in *Koso* v. *Greene* (260 N. Y. 491, 494) when he wrote: " Temporary or provisional appointees, though in a sense holding positions in the competitive class, are, for reasons of necessity, exempt from the civil service requirements for appointment; and similarly, so long as they hold such positions, they are entitled to none of the advantages secured by period of tenure under the civil service rules. * * * Permanent appointments are made without reference to whether the appointee is holding a temporary or provisional appointment to the same position, or how long such appointment has lasted. These appointments are mere stop-gaps, exceptions of necessity to the general rules with respect to the filling of such positions, and are in no sense probationary. *While such appointments may on occasion be succeeded by a permanent appointment, this may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of the temporary or provisional appointment into a permanent appointment.*"

Section 22 of the Civil Service Law affords protection to a veteran of the World war from discharge except after a hearing upon charges preferred, but this does not apply to one who has never taken a competitive or qualifying examination for a position in the classified service, nor been legally appointed to a position in the exempt class. (*Palmer* v. *Board of Education*, 276 N. Y. 222.) This principle, applicable here, was laid down in *People ex rel. Hannan* v. *Board of Health* (153 N. Y. 513) in reference to the claim of a Civil war veteran, where the court said (at p. 519): " The object of the act was to protect those lawfully appointed or employed from removal without a chance to be heard. As the position in question was subject to the civil service statute, and rules, the failure of the relator to pass the examination required made his appointment illegal, for it was expressly prohibited by the act * * *. He had no title to the position, and it was the duty of the defendants upon learning the facts to dispense with his services and appoint a person who possessed the qualifications required by law."

Although the employment of the petitioner, Joseph Smith, in its inception was permitted under existing statute because of the

temporary emergency, it did not ripen into a legal position under the Civil Service Law. The continuation of petitioner's temporary employment was expressly limited and became illegal after June 30, 1940, by the provisions of section 3-l of the Public Welfare Law. There is no statutory or constitutional provision conferring any right or preference in favor of an employee who serves under such circumstances.

The so-called "Three-year Fidelity" clause in section 14 of the Civil Service Law is not available to the petitioner because it presupposes three years' service in a similar position by an incumbent who was in office as the result of successfully passing an open competitive examination. (*Talbert* v. *Jeacock*, 14 N. Y. Supp. [2d] 362.)

The petitioner, not being in the exempt class, the non-competitive class, and not having qualified in any manner either before or after July 1, 1940, for the competitive class position he holds, enjoys no standing under the Civil Service Law. Eligibility to civil service preferment or position cannot be acquired without some foundation under the law or the rules. It is unfortunate that the manner of his original appointment is not a matter of record, for it could well have afforded him civil service rights had appropriate action been taken at that time.

There is no conflict of authority upon any of the matters discussed herein, and there are many other sustaining decisions of the upper courts in accord upon similar facts. The position in question is in the competitive class and cannot be filled by one who has not become qualified through competitive examination. The period of petitioner's legal employment in a temporary capacity has expired, and neither his prior service nor his status as a veteran operates as an exemption from qualification through competitive examination and original appointment. The petition is accordingly dismissed, without costs.

This proceeding was instituted by the petitioner not only in his own behalf, but for the benefit of a number of other employees similarly situated, all of whom have continued to render services pending a determination of their legal status. Neither their good faith nor that of the employing bureau in the inception of the relationship has been challenged. As a result of the determination herein, these worthy veterans must seek employment elsewhere. It is regrettable that the court has no power to authorize or direct any payment to them, but it is hoped that the municipal authorities, with the acquiescence of the civil service commission, may find some manner of compensating them for services actually performed, upon *quantum meruit* or otherwise.